UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 5:25-cv-02783-AB-PVC | Date: | October 23, 2025 |

| | |
|---|---|
| Title: | X.R.M. v. Fereti Semaia, et. al. |

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [DKT. NO. 2]

On October 21, 2025 Petitioner X.R.M. ("Petitioner") filed an *Ex Parte* Application For Temporary Restraining Order and Order to Show Cause ("TRO Appl.," Dkt. No. 2). Respondents Warden Fereti Semaia, Secretary of the Department of Homeland Security ("DHS") Kristi Noem, Acting Director of U.S. Immigration and Customs Enforcement ("ICE") Todd Lyons, Attorney General Pam Bondi, and Acting Director of the Los Angeles ICE Field Office Ernesto Santacruz, Jr. (collectively, "Respondents") filed an Opposition on October 22, 2025 ("Opp'n," Dkt. No. 7). For the reasons set forth below, Petitioner's TRO Application is **GRANTED**.

### I. BACKGROUND

Petitioner initiated this action through a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ("Habeas Pet.," Dkt. No. 1). Petitioner is a twenty-five-

year-old Salvadoran citizen who fled El Salvador after receiving death threats from both her father and MS-13. (TRO Appl. at 3). Petitioner initially arrived in the United States in December 2023 and was briefly detained by federal agents upon arrival. (*Id.*). On December 27, 2023, she was released in accordance with INA Section 236 once it was determined she was not a flight risk or a danger to the community. (*Id.* at 3-4, 6). That same day, DHS issued a Notice to Appear that charged Petitioner as being present without admission or parole and inadmissible under INA § 1182(a)(6)(A)(i). (*Id.* at 2).

Petitioner has since been living in the United States for almost two years with her partner. (*Id.* at 4). Petitioner has no criminal history and has complied with all requirements from the government. (*Id.*). Petitioner further intends to file her asylum application next month, with the assistance of counsel. (*Id.*).

On August 9, 2025, Petitioner was arrested by ICE while working as a food vendor. (*Id.*). ICE agents did not have a warrant and did not ask Petitioner to identify herself. Agents ran towards Petitioner and commanded her not to run. She followed their commands. (*Id.*). She was then violently arrested, with an officer slamming her into the ground digging his knee on her chest. (*Id.*). When she told the officer that she was having trouble breathing and was in pain, the officer told her to shut up. (*Id.*). Petitioner was subsequently handcuffed and placed in an ICE detention facility. (*Id.* at 4-5). For the first three days of her detention, she received no medical care, no private bathroom, or a bed. (*Id.* at 5). Petitioner was then transferred to Adelanto ICE Processing Facility where she remains detained. (*Id.*).

Petitioner is diagnosed with "Epilepsy and Generalized Idiopathic Epileptic Syndromes," and sustained a back injury during the arrest. She has not had access to her medications, therapy, and specialized treatment since she has been in custody. (*Id.*).

Petitioner is charged with having entered the United States without inspection under 8 U.S.C. § 1182(a). (*Id.* at 9). On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a precedent decision in *Matter of Yajure Hurtado* finding that non-citizens, like Petitioner, who entered the United States without inspection are classified as "applicants for admission." 29 I&N Dec.216 (BIA 2025). According to this decision, these noncitizens are now ineligible for bond redetermination hearings pursuant to 8 U.S.C. § 1225(b)(2)(A). *Id.*

Petitioner argues the precedent decision in *Matter of Yajure Hurtado* is contrary to the applicable statutory text in 8 U.S.C. §§ 1225 and 1226 as well as

decades of agency practice. (*Id.* at 3). Petitioner alleges that her ongoing detention without a bond hearing deprives her of statutory and constitutional rights. *Id.* Accordingly, Petitioner has filed the present TRO Application seeking to be immediately released from custody or, in the alternative, be provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a). *Id.*

This Court notes that it has previously reviewed the issues set forth in this matter. *Miguel Santiago Flores v. Kristi Noem*, No. 5:25-cv-02490-AB-AJR (C.D. Cal. September 29, 2025). For the same reasons articulated in its earlier decision, this Court **GRANTS** Petitioner's TRO Application.

## II. LEGAL STANDARD

To obtain a TRO, Petitioner must show (1) she is likely to succeed on the merits of her claims, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Stromans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

A TRO is a kind of ex parte application, so the moving party must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words . . . the moving party [must show why it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D.Cal. 1995) (explaining that the applicant for ex parte relief must demonstrate urgency and that it is without fault in creating the urgency).

## III. DISCUSSION

Petitioner argues her continued detention by ICE without a bond hearing violates her statutory right to a bond hearing under 8 U.S.C. § 1226(a), the Administrative Procedure Act ("APA"), and the Fourth and Fifth Amendments of the U.S. Constitution. (Habeas Pet. ¶¶ 18-23). Respondents contend this Court does not have jurisdiction over the matter. (Opp'n 5-9). Alternatively, should the Court find jurisdiction, Respondents argue that Petitioner's TRO Application fails on the merits. (*Id.* at 9-14). The Court reviews the jurisdictional argument first before assessing the substantive merit of Petitioner's TRO Application.

### A. The Court has jurisdiction to review Petitioner's Application.

Respondents argue 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g) strip this Court of jurisdiction. (*Id.* at 5-9). This position is inconsistent with the plain text of the statute and applicable case law.

### i. Jurisdiction under 8 U.S.C. § 1252(b)(9).

Respondents submit this Court does not have jurisdiction as 8 U.S.C. § 1252 (b)(9) divests district courts of jurisdiction to review direct and indirect challenges to removal orders, including Petitioner's action. (*Id.*) Under 8 U.S.C. § 1252(b)(9):

> (b) With respect to *review of an order of removal under subsection (a)(1). . .* (9) Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from* any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252 (b)(9) (emphasis added). Respondents claim Petitioner's action challenges the government's decision to detain her, which arises from the government's decision to commence removal proceedings. Thus, this action would only be reviewable by final removal action, per 8 U.S.C. § 1252(a)(5). (Opp'n 6-9). The Court disagrees with Respondents' position.

First, Respondents reading of "arises from" is overly broad and inconsistent with precedent. The Supreme Court previously rejected an expansive reading of the "arising from" language, finding that it would be extreme and contrary to prior decisions. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (holding that requiring a final removal order to review *Bivens* claims or state-law assault claims simply because such actions would not have arisen but-for a removal action does not mean those actions are "arising from" a removal action). An expansive reading of "arising from," akin to Respondents' interpretation, could result in situations where a detainee would be deprived "of any meaningful change for judicial review." *Id*.

Additionally, the *Jennings* Court determined 8 U.S.C. § 1252(b)(9) is not a jurisdictional bar to review when a party "[is] not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 294. While Respondents argue Petitioner is challenging the government's decision to detain her in the first place, this argument mischaracterizes Petitioner's position. Petitioner is not challenging the decision to detain or to seek removal; rather, Petitioner challenges the government's decision to detain her pursuant to 8 U.S.C. § 1225 and deny her a bond hearing she would be entitled to under 8 U.S.C. § 1226. To find that 8 U.S.C. § 1252(b)(9) bars jurisdiction in this case would be an expansive reading of the phrase "arising from" and could produce the "absurd" results the *Jennings* Court warned against. *Id.* at 293.

This Court finds 8 U.S.C. § 1252(b)(9) is not a jurisdictional bar to review of Petitioner's TRO Application.

### ii. Jurisdiction under 8 U.S.C. § 1252(g).

Respondents additionally claim that 8 U.S.C. § 1252(g) bars this Court from reviewing Petitioner's TRO Application. (Opp'n 5-6). Again, Respondents argument fails in light of *Jennings v. Rodriguez*. 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The *Jennings* Court held that § 1252(g) is a *narrow* provision, limited to the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders." *Jennings*, 583 U.S. at 293. As with § 1252(b)(9), Respondents' claim that Petitioner's detention "arises from the decision to commence such proceedings against them" fails for the same reasons articulated in the section above. *See* Opp'n 5-6.

Respondents rely on an overly broad interpretation of the phrase "arising from" that is contrary to precedent set in *Jennings*. Petitioner's TRO Application

does not arise from a decision or action to commence proceedings; rather, it arises from the decision to classify Petitioner as an "applicant for admission," thereby denying Petitioner a bond hearing. In reviewing 8 U.S.C. § 1252(g), the *Jennings* Court emphasized that it would not "interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions." *Jennings*, 583 U.S. at 293. Instead, this provision would be limited to "just those three specific actions themselves." *Id.* Accordingly, since Petitioner's action does not arise from a decision to commence proceedings, adjudicate cases, or execute removal orders, this Court finds that § 1252(g) is not a jurisdictional bar to review.

### B. Petitioner has met her burden for a TRO.

The Court, having established no jurisdictional bar, will assess the merits of Petitioner's TRO Application.

### i. Likelihood of Success on the Merits

Petitioner argues that, per the plain text of the statute and the controlling case law, 8 U.S.C. § 1226(a) applies to noncitizens currently in the United States, like Petitioner. Accordingly, Petitioner argues she would be entitled to the bond hearing guaranteed by § 1226(a). (TRO Appl. 9-12).

Section 1226 expressly concerns the "apprehension and detention" of noncitizens and establishes two different processes for noncitizens. 8 U.S.C. § 1226. Section 1226(a) sets forth a general provision governing the arrest, detention, and release of noncitizens in the United States pending a removal decision. 8 U.S.C. § 1226(a). By contrast, § 1226(c) articulates the specific process applicable to the detention of "criminal aliens," as defined by § 1226(c)(1). 8 U.S.C. § 1226(c).

Notably, the procedures governing release vary for an individual detained under § 1226(a) versus § 1226(c). Release under § 1226(a) confers an "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022). Conversely, release under § 1226(c) is subject to a higher threshold determination by the Attorney General. 8 U.S.C. § 1226(c) (The Attorney General may release a "criminal alien" only if the Attorney General decides that release is necessary pursuant to specified objectives.).

Respondents argue the applicable provision is not § 1226(a), but § 1225(b)(2). Under Respondents' theory, Petitioner would be classified as an "applicant for admission" subject to the provisions of § 1225(b)(2). (Opp'n 9-11). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Applicants for admission are subject to mandatory detention under § 1225(b)(2) if the noncitizen is "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Respondents argue that this provision is applicable to both those individuals currently in the United States and those who arrive in the United States.

Respondent's theory, however, misinterprets the plain text of the statute. If individuals presently in the United States without inspection or admission are "applicants for admission" subject to mandatory detention, there would be no reason for § 1226 to except another group, or "criminal aliens," to mandatory detention. 8 U.S.C. § 1226(c)(1). Respondents argue that this is an "irreconcilable conflict in two legal provisions," where the specific, or 8 U.S.C. § 1225, should govern over the general, or 8 U.S.C. § 1226. (Opp'n 9-10). This interpretation, however, manufactures an "irreconcilable conflict" where previously none existed.

Section 1226 and § 1225 apply to two different groups of individuals. Section 1225 applies to "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,'" and applies at "the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 582 U.S. at 287-88. Conversely, § 1226 applies to noncitizens *currently residing* in the country but who "do not have an absolute right to remain here." *Id.* at 288-289. These noncitizens may fall into either the general provisions of § 1226(a) or the "criminal alien" category of § 1226(c). *Id.*

Accordingly, this Court finds no irreconcilable conflict between § 1226 and § 1225. While Respondents attempt to create a conflict between these two provisions, their position conflicts with the "basic interpretive cannon that 'a statute should be construed [to give effect] to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corely v. United States*, 556 U.S. 303, 314 (2009). In taking Respondents position, this Court would render portions of § 1226 inoperative. Consistent with cannons of statutory interpretation and prior case law, this Court finds that § 1226 and § 1225 apply to two different

groups of individuals: those already residing in the country and those attempting to enter the country, respectively.

Adopting this position, this Court finds Petitioner is likely to succeed on the merits of her claim, as she belongs to the class of individuals covered under § 1226 and should not be detained pursuant to § 1225.

### ii. Irreparable Harm

In order to obtain a TRO, a Petitioner must demonstrate she is likely to suffer irreparable harm in the absence of preliminary relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Petitioner has been detained by ICE without a bond hearing since August 2025. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that the "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The Ninth Circuit has further recognized the irreparable harms suffered by those in ICE detention, including "subpar medical and psychiatric care. . . economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). These concerns are especially relevant for Petitioner as she suffers from severe medical conditions. (TRO Appl. 19-20).

Petitioner's continued detention in ICE custody without a bond hearing constitutes an irreparable harm. This Court finds the second TRO factor is satisfied.

### iii. Balance of the Equities and Public Interest

The last two TRO factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court finds that both the balance of the equities and the public interest weigh heavily in favor of Petitioner.

As noted above, it is likely that Petitioner's continued detention pursuant to § 1225 and denial of a bond hearing under the new DHS policy constitutes a violation of federal law. Violations of federal law are neither equitable nor in the public's interest. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

Respondents argue that they have a compelling interest in the "steady enforcement of immigration laws" and that a TRO would "disrupt the status quo." (Opp'n 13-14). While the Court agrees that there is a compelling interest in the enforcement of immigration laws, this interest is not so compelling as to permit Respondents to violate Petitioner's statutory rights. The Court is also not persuaded by Respondents' argument that issuing a TRO would disrupt the status quo. As Respondent's position is inconsistent with controlling case law and prior practice, the Court does not find that any possible disruption to the "status quo" is sufficiently compelling to override Petitioner's interest.

Accordingly, this Court finds that the final two TRO factors weigh in favor of Petitioner.

## IV.  CONCLUSION

For the reasons stated above, this Court finds Petitioner has met her burden for a TRO. The Court **GRANTS** Petitioner's Application for a TRO. **IT IS FURTHER ORDERED** that:

1. Respondents must provide Petitioner an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) by Friday, October 31, 2025.

2. Petitioner and Respondents must provide the Court a status report on the individualized bond hearing by 12:00 pm PST Monday, November 3, 2025.

3. Respondents are further ordered to show cause, in person, on why a preliminary injunction should not issue at 9:00 am PST on November 5, 2025.

4. This Order shall be in effect for a period of fourteen (14) days from entry hereof, after which it shall expire absent further order of the Court.

5. Respondents are enjoined from transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court and pending final resolution of this litigation.